IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-200-FL

| | | |
|---|---|---|
| CARL TUTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TOWN OF FUQUAY-VARINA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for summary judgment. (DE 21; DE 28). The issues raised are briefed fully and are ripe for ruling. For the reasons that follow, the court grants defendant's motion for summary judgment and denies plaintiff's motion for the same.

**STATEMENT OF THE CASE**

On February 27, 2015, plaintiff, a former employee of defendant, filed this suit in Wake County Superior Court. (See Compl., DE 1-1). Plaintiff asserts against defendant two causes of action. First, plaintiff asserts a common law breach of contract claim. Second, plaintiff asserts through 42 U.S.C. § 1983 an impairment of contract claim, alleging a violation of Article I, Section 10, of the United States Constitution (the "Contracts Clause").[1] As derived from the complaint,

---

[1] Plaintiff's complaint alleges only a claim for "[v]iolations of U.S. Constitution." (Compl. at 4). Although this language suggests a "direct" violation of the Contracts Clause, in briefing on the instant motions for summary judgment plaintiff takes the position that his Contracts Clause claim actually is alleged under § 1983. See (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., DE 38, at 11) ("The Town correctly cites the principle that a Plaintiff must show that the Town impaired his ability to obtain a remedy for the Town's breach."); see also Crosby v. City of Gastonia, 635 F.3d 634, 640 (4th Cir. 2011) ("[R]ecourse to § 1983 for the deprivation of rights secured by the Contracts Clause is limited to the discrete instances where a state has denied a citizen the opportunity to seek adjudication through the courts as to whether a constitutional impairment of a contract has occurred, or has foreclosed the imposition of an adequate remedy for an established impairment."). Accordingly, the court considers plaintiff's Contracts Clause claim as sounding under § 1983.

plaintiff alleges that defendant both breached and impaired a contract existing between the parties when it failed to provide him with "retiree health insurance benefits" in accordance with a certain personnel policy adopted by defendant in 2000 (the "2000 Personnel Policy").

Defendant removed this case to this court on May 7, 2015, pursuant to 28 U.S.C. § 1441 and § 1446. Defendant invokes this court's federal question jurisdiction, 28 U.S.C. § 1331.

After a period of discovery, the parties filed cross-motions for summary judgment. Defendant attacks plaintiff's claims on several grounds. As relevant here, defendant contends that both plaintiff's claims are barred by the applicable two-year statute of limitations. According to defendant, plaintiff's causes of action accrued no later than January 1, 2006, when it implemented an amended personnel policy (the "2006 Personnel Policy"), which retroactively limited access to the retiree health insurance benefits provided by the 2000 Personnel Policy based on certain criteria. Because plaintiff failed to file suit on or before January 1, 2008, argues defendant, his claims are time-barred.

In support of its motion for summary judgment, defendant relies on plaintiff's deposition transcript, (Pl.'s Dep., DE 24-1); and the deposition transcript of Andrew Hendrick, its former Manager, (Hendrick Dep., DE 24-4). In addition, defendant relies on the declarations of Rose Rich, its Clerk, (Rich Decl., DE 24-2); and Dan Gray, its Human Resources Director, (Gray Decl., DE 24-3). Appended to the Rich declaration, and further relied on by defendant, is 1) a June 23, 1999, policy memorandum establishing the retiree health insurance benefits policy, (Policy Memo., Rich Decl. at 3); 2) the 2000 Personnel Policy, which policy was adopted by resolution of defendant's Board of Commissioners, (2000 Personnel Policy, Rich Decl. at 4); and 3) the 2006 Personnel Policy, which policy also was adopted by resolution of defendant's Board of Commissioners, (2006

2

Personnel Policy, Rich Decl. at 40). Annexed to the Gray declaration are the following items, also relied on by defendant in support of its motion: 1) a signed acknowledgment form indicating plaintiff's receipt of the 2000 Personnel Policy, (2000 Acknowledgment Form, DE 25-5); 2) a similar signed acknowledgment form indicating plaintiff's receipt of the 2006 Personnel Policy, (2006 Acknowledgment Form, DE 25-6); 3) plaintiff's letter of retirement, dated January 23, 2013, (Retirement Letter, DE 25-7); and 4) plaintiff's "employee detail report," which lists plaintiff's date of birth, date of hire, and termination date, (Employee Report, DE 25-8).[2]

Plaintiff argues in support of his motion that he is entitled to judgment as a matter of law on both his breach of contract and impairment of contract claims. Plaintiff relies on his own deposition transcript, (Pl.'s Dep., DE 33-1); and affidavit, (Pl.'s Aff., DE 32-1). In addition, plaintiff relies on Hendrick's deposition transcript, (Hendrick Dep., DE 33-2); the affidavit of Jerry Phillips, defendant's former Chief of Police, (Phillips Aff., DE 32-2); and defendant's responses to his first set of interrogatories and requests for production of documents, (Discovery Responses, DE 33-3).

**STATEMENT OF UNDISPUTED FACTS**

A.  History of Defendant's Retiree Health Insurance Benefits Policy

On June 23, 1999, defendant issued a policy memorandum to its employees announcing the adoption of a retiree health insurance benefits policy. (See Policy Memo, Rich Decl. at 3; see also Pl.'s Dep. 17:18–18:13).[3] That policy memorandum provided in full:

---

[2] Substantively identical copies of those exhibits annexed to the Gray declaration also are included as exhibits to plaintiff's deposition transcript. (See DE 25-1 through DE 25-4).

[3] All citations to plaintiff's deposition transcript, "Pl.'s Dep.," refer to that copy of plaintiff's deposition transcript on the docket at entry number 33-1. That copy is plaintiff's full deposition transcript, as opposed to the copy on the docket at entry 24-1, which only includes selected excerpts.

3

Health insurance will be paid in full for all employees retiring from the Town of Fuquay-Varina who meet the following conditions:

1. Must be working with the Town of Fuquay-Varina at the time of retirement.
2. Must have at least 15 years of service with the Town of Fuquay-Varina.
3. Must officially retire with the Local Government or Law Enforcement Officers System

Health insurance coverage will be paid until the retiree is eligible for Medicare.

(Policy Memo, Rich Decl. at 3).

On September 19, 2000, defendant's Board of Commissioners adopted by resolution the 2000 Personnel Policy, which incorporated the retiree health insurance benefits policy in language substantively identical to that used in the June 23, 1999, policy memorandum. (See 2000 Personnel Policy, Rich Decl. at 4, 23).

The 2000 Personnel Policy was in place for approximately five years. (See Hendrick Dep. 12:9–17; see also 2006 Personnel Policy, Rich Decl. at 40).[4] In September, 2005, defendant's Board of Commissioners adopted by resolution the 2006 Personnel Policy, which alters the class of employees eligible for retiree health insurance benefits. (See Hendrick Dep. 12:9–17; see also 2006 Personnel Policy, Rich Decl. at 40). Under the 2006 Personnel Policy, retired employees will be provided health care coverage if they:

a) Retire under the provisions set forth in the North Carolina Local Governmental Employees' Retirement System
b) Have a minimum of 15 years of continuous service as a full time employee of the Town of Fuquay-Varina
c) Have attained their 60th Birthday
d) Have not attained their 65th Birthday
e) Have elected continuation of coverage at the time of retirement.

---

[4] The 2006 Personnel Policy does not explicitly list its date of adoption. However, each page contains a "footer" reading "Personnel Policy Amended September 2005.doc."

4

(2006 Personnel Policy, Rich Decl. at 57).  Thus, the 2006 Personnel Policy differs from the 2000 Personnel Policy where it requires employees to work until their 60th birthday to gain eligibility for retiree health insurance benefits.  Above that pertinent provision, the 2006 Personnel Policy states in bold "Effective date of this subsection is January 01, 2006.  Those retiring before this date fall under former policy."  (Id.).

B.  Publicity for the 2006 Personnel Policy

Following defendant's Board of Commissioner's adoption of the 2006 Personnel Policy, in October and November 2005, Hendrick held a series of meetings with defendant's employees to discuss the differences between the 2000 Personnel Policy and the 2006 Personnel Policy.  (See Hendrick Dep. 32:21–33:17; Pl.'s Dep. 27:9–31:13; Pl.'s Aff. ¶8).  At these meetings, Hendrick indicated that newly-hired employees would not receive retiree health insurance benefits under the 2000 Personnel Policy.  (Pl.'s Aff. ¶8).  Hendrick also implied that the 2006 Personnel Policy would alter the retiree health insurance benefits policy as it applied to those employees who had the 15 years of service required by the 2000 Personnel Policy but who were not going to retire before the 2006 Personnel Policy took effect.  (Hendrick Dep. 32:21–33:17) ("What my conversation was was that there was a policy in place and the clock was running out on that policy December 31.").  However, Hendrick never expressly and succinctly addressed "[w]hat happens to people who have already gotten their 15 years."  (Id. 35:2–20).

C.  Plaintiff's History, Employment, and Denial of Benefits

Plaintiff was born November 10, 1959, and began working for defendant as a police officer on January 19, 1983, at age 23.  (Employee Report at 1).  He was employed in various law enforcement capacities by defendant continuously from January 19, 1983, up to and including

5

February 28, 2013, at which time he retired. (Id.; Retirement Letter at 1; Pl.'s Dep. 11:10–13:11). Plaintiff was 53 years old when he retired.

At the time the 2000 Personnel Policy was promulgated, plaintiff had been employed by defendant for 17 years. (See Employee Report at 1). Thus, had plaintiff been eligible to and elected to retire between September 23, 2000, and December 31, 2005, inclusive, he would have been entitled to retiree health insurance benefits as outlined in the 2000 Personnel Policy. Indeed, the fact that plaintiff was eligible for retiree health insurance benefits under the 2000 Personnel Policy was known to other of defendant's employees; some time before 2005, plaintiff's supervisor, then Chief of Police, Stacy Pleasant told him on several occasions "You're vested," "You're covered," or other words of similar effect to indicate that he had retiree health insurance benefits under the 2000 Personnel Policy. (Pl.'s Aff. ¶5).

Following defendant's Board of Commissioner's adoption of the 2006 Personnel Policy in September 2005, plaintiff, relying on Pleasant's earlier representations, believed that the 2006 Personnel Policy did not apply to him. (Id. ¶¶7–8). Plaintiff held this belief notwithstanding the fact that he was 46 years old on January 1, 2006, some 14 years away from eligibility for retiree health insurance benefits under the 2006 Personnel Policy.

In October or November 2005, plaintiff attended one of the meetings led by Hendrick. (Id. ¶8). Plaintiff generally does not recall the subject matter of the meeting. (Pl.'s Dep. 27:9–32:3, 76:4–10). However, plaintiff does recall Hendrick explaining specifically that the 2006 Personnel Policy would limit newly-hired employees' access to retiree health insurance benefits. (Pl.'s Aff. ¶8).

6

Following plaintiff's retirement, in March 2013, defendant denied plaintiff retiree health insurance benefits because he was not old enough to qualify, consistent with its 2006 Personnel Policy. (Id. ¶10). This suit followed.

## COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). When faced with cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251; see also Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) ("[T]he court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.") (internal citations and quotations omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co.

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S.654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability. . .and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

Defendant argues that both of plaintiff's claims are barred by the applicable two-year statute of limitations. Defendant contends that plaintiff's causes of action accrued no later than January 1, 2006, the date on which the 2006 Personnel Policy took effect. According to defendant, plaintiff should have sued before January 1, 2008. In response, plaintiff argues that both of his causes of action accrued on or about March 1, 2013, when defendant denied him retiree health insurance benefits. Thus, in plaintiff's view, the statute of limitations did not run until, at earliest, March 1, 2015, several days after he filed this case in Wake County Superior Court. The court agrees with

8

defendant. Because both of plaintiff's causes of action accrued, at latest, on January 1, 2006, the two-year statute of limitations applicable to both his breach of contract and impairment of contract claims elapsed on January 1, 2008. Accordingly, the court grants defendant's motion.

1.  Breach of Contract

The court applies North Carolina's statute of limitations to plaintiff's breach of contract claim. See Eagle Nation, Inc. v. Market Force, Inc., 180 F. Supp. 2d 752, 755 (E.D.N.C. 2001). Under North Carolina law, "[a]n action against a local unit of government upon a contract, obligation or liability arising out of a contract, express or implied," must be commenced within two years of the date on which the cause of action accrues. N.C. Gen. Stat. § 1–53(1). "A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Penley v. Penley, 314 N.C. 1, 20 (1985). As relevant here, the "right to institute and maintain a suit arises. . .on the date the promise is broken." Id. Where a public employee is deprived by a change in the law of benefits previously guaranteed by a statute, ordinance, or resolution, the "promise is broken," and thus the employee's cause of action accrues, no later than the date on which the amended statute, ordinance, or resolution is put into effect. See Liptrap v. City of High Point, 128 N.C. App. 353, 356 (1998). Accordingly, plaintiff's cause of action accrued and the two-year statute of limitations began running, at latest, on January 1, 2006, when the 2006 Personnel Policy adopted by defendant's Board of Commissioners was put into effect. The two-year statute of limitations applicable to plaintiff's breach of contract claim elapsed, at latest, on January 1, 2008.

Plaintiff attempts to dispute this conclusion in two ways. However, neither of plaintiff's arguments are persuasive.

9

First, plaintiff suggests that defendant's Board of Commissioners did not replace the retiree health insurance benefits policy adopted as part of the 2000 Personnel Policy because the 2006 Personnel Policy did not "definitively and totally repudiate" the 2000 Personnel Policy, relying on MedCap Corp. v. Betsy Johnson Health Care Systems, 16 F. App'x 180 (4th Cir. 2001). In essence, plaintiff argues that the effect of the 2006 Personnel Policy was ambiguous. The court disagrees. The 2006 Personnel Policy provided that "[t]hose retiring before [January 1, 2006,] fall under [the 2000 Personnel Policy]." (2006 Personnel Policy, Rich Decl. at 57). The clear implication of that language is unambiguous; those who retired on or after January 1, 2006, would not fall under the 2000 Personnel Policy, but, rather, would fall under the 2006 Personnel Policy. Any contrary construction would be implausible.

In any event, defendant retained the ability to "change" the "benefits" provided by the 2000 Personnel Policy. (See 2000 Personnel Policy, Rich Decl. at 23). That reservation of rights serves as further evidence that the 2006 Personnel Policy was meant to be applicable to all employees, including those who had achieved the 15 years of service necessary to qualify for retiree health insurance benefits under the 2000 Personnel Policy. See N.C. Ass'n of Educators, Inc. v. State, __ N.C.__, 786 S.E.2d 255, 264 (2016) (statutory amendments that altered details of teacher tenure statute, while leaving tenure system intact, evidence that state intended changes in details to be applicable to all teachers).

Second, plaintiff argues that Liptrap should not control given the delayed effect of defendant's actions in this case. Plaintiff contends that in Liptrap the plaintiff's injury was "immediate," in contrast to his injury, which he maintains did not occur until he was denied benefits. In Liptrap, from 1966 until 1992, High Point city employees received annual longevity payments

10

that increased in five-year increments (for example, annual payments for years one to five were at a fixed amount, payments for years six to 10 were at a higher fixed amount, and so on). 128 N.C. App. at 354. In June 1992, the city "passed a resolution freezing the amount of the [city employees'] annual longevity payments to the same dollar amount as paid out in December of 1991." Id. When several employees brought suit in November 1996, the superior court dismissed their claims as untimely. Id. On appeal, the North Carolina Court of Appeals affirmed, holding that the plaintiffs' claims were barred by § 1–53(1), because their causes of action accrued when the city "passed the resolution freezing the amount of longevity pay and breached [its] contracts with plaintiffs." Id. at 356.

Plaintiff's attempt to distinguish Liptrap is unavailing. High Point's decision to freeze longevity payments was not "immediate," as plaintiff argues. The impact of the city's decision was delayed, just like defendant's decision in this case. In Liptrap longevity payments were made annually to each qualifying employee. Logically, then, there was some delay between the city's decision to freeze longevity payments and the time at which the plaintiffs felt the effect of that decision. Assuming those longevity payments were made in December of each year (as opposed to on the anniversary of each employee's start date, for simplicity), that delay could have been as long as four years in some situations. Consider, for example, an employee who received her first annual longevity payment in December 1991, immediately before rates were frozen. That employee would not have been due for an increase in the amount of her annual longevity payment until December 1996. Under plaintiffs' theory of accrual, that employee's breach of contract cause of action would not have accrued until her increased payment was due. However, Liptrap rejects that position.

11

Nevertheless, in further support of his position that deprivation of retirement benefits only constitutes an injury after retirement, plaintiff directs the court's attention to <u>Hogan v. City of Winston-Salem</u>, 121 N.C. App. 414 (1996). In particular, plaintiff relies on the <u>Hogan</u> court's statement that "no breach of contract occurs until the Retirement System fails to deliver plaintiffs' vested benefits" to distinguish <u>Liptrap</u> and carve out a rule specially applicable to retirement benefits. <u>Id.</u> at 421. However, <u>Hogan</u> is, at best, unpersuasive.

In <u>Hogan</u>, the North Carolina Court of Appeals considered and affirmed a superior court's order granting summary judgment for Hogan on an impairment of contract claim arising after the city of Winston-Salem amended its ordinances relating to disability-based retirement benefits. <u>Id.</u> at 416–20. The court also affirmed the superior court's order dismissing Hogan's breach of contract claim:

> Plaintiffs first argue that the trial court erred by granting summary judgment on its [sic] second claim for breach of contract. We disagree. Defendant may amend ordinances so long as the amendment is not unconstitutional. As we have affirmed the trial court's decision that the Amendment herein is unconstitutional as applied to plaintiff in that his contractual rights have been impaired, no breach of contract occurs until the Retirement System fails to deliver plaintiffs' vested benefits according to the previous unamended contract.

<u>Id.</u> at 421. The city had used the amended ordinance to deny Hogan benefits; because the amended ordinance was held unconstitutional and was ineffective as to Hogan, and because Hogan had not been denied benefits under the unamended ordinance, the city had not yet broken its original promise to him. <u>See id.</u> <u>Hogan</u> does not support plaintiff's argument. Under the theory set out in <u>Hogan</u>, a plaintiff may have a separate breach of contract claim where an amended city ordinance is set aside as unconstitutional and the city later denies benefits on the basis of the <u>unamended</u> ordinance. That is not the case here.

12

In sum, plaintiff's breach of contract claim is barred by the statute of limitations and fails. The two-year statute of limitations expired no later than January 1, 2008, two years after defendant amended the 2000 Personnel Policy.

2.  Impairment of Contract

Plaintiff's impairment of contract claim does not have an explicit statute of limitations; for § 1983 claims federal courts apply the forum state's "most analogous" statute of limitations. Owens v. Okure, 488 U.S. 235, 239–41 (1989). In the instant case, the parties agree that the statute of limitation "most analogous" to plaintiff's impairment of contract claim is the two year statute of limitations applicable to plaintiff's breach of contract claim.

The effect of the statute of limitations depends on when plaintiff's cause of action accrued. Accrual is a question of federal law. Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991). Under federal law, plaintiff's cause of action accrued "when plaintiff [knew] or ha[d] reason to know of the injury which is the basis of the action." Id. at 1162. An impairment of contract claim accrues on the day plaintiff's alleged contractual right is impaired. See Smith v. City of Enid *ex rel.* Enid City Comm'n, 149 F.3d 1151, 1154 (10th Cir. 1998).

In this case, plaintiff's contractual right, secured by the 2000 Personnel Policy, was impaired no later than January 1, 2006, when the 2006 Personnel Policy amended the 2000 Personnel Policy. The "very essence" of an impairment of contract claim "is [the] substantial impairment of plaintiff's contractual relationship with [defendant] by a change in law." Id.; accord General Motors Corp. v. Romein, 503 U.S. 181, 186–87 (1992) (discussing passage of statute as impairment); Balt. Teachers Union v. Mayor & City Counsel of Balt., 6 F.3d 1012, 1015 (4th Cir. 1993) ("[I]t must be determined whether the state law has, in fact, operated as a substantial impairment of a contractual

13

relationship.") (internal quotations omitted). As explained above, as of January 1, 2006, the 2006 Personnel Policy amended the 2000 Personnel Policy insofar as the 2000 Personnel Policy awarded to all employees who had 15 years of service retiree health insurance benefits. Thus, "the constitutional injury, the injury which trigger[ed] the statute of limitations for purposes of § 1983, occurred when the [2006 Personnel Policy] became law." Smith, 149 F.3d at 1154. Accordingly, plaintiff's impairment of contract claim accrued on January 1, 2006, and the two-year statute of limitations expired on January 1, 2008.

In sum, plaintiff's impairment of contract claim is barred by the statute of limitations and fails. The two-year statute of limitations expired no later than January 1, 2008, two years after defendant amended the 2000 Personnel Policy.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 21) and DENIES plaintiff's motion for summary judgment (DE 28). The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 19th day of July, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge